Case No. 23-6107, Ashley Franklin v. Franklin County KY at all. Argument not to exceed 15 minutes per side. Mr. Belsey, you may proceed with the appellant. Good morning. Good morning, Your Honors, and may it please the Court, may I have three minutes for rebuttal? You may. My name is Greg Belsey. I'm appearing this morning on behalf of the plaintiff and the appellant in this case, Ashley Franklin. I'd like to begin, Your Honors, with, and it could be stated nowhere better than the Tenth Circuit opinion in J&J v. Polk County. And this was an en banc decision of all the judges of the Seventh Circuit. They said first that the confinement setting is a tinderbox for sexual abuse. And they went on to say that the risks to female inmates in the confinement setting are obvious. Indeed, PREA owes its existence to that reality. And they went on to hold that given that reality, the county in that case could not simply just dispatch male guards to stand watch over its female inmates equipped with nothing more than a piece of paper with a flat instruction not to abuse those under their care. That sort of prohibition has never worked. PREA recognizes that and says prevention must be the focus and prevention requires something other than merely a broad prohibition against sexual abuse. It requires a focus on the policies that provide the opportunity for that. And that's the primary focus of our appeal in this case. Because we have a policy here, a practice of the jail, in which that permitted lone, unsupervised male officers to transport sick, vulnerable female inmates to and from the hospital. Is there anything at PREA or anywhere else that bars that? No, Your Honor, but our argument in this case, and J.K.J. Polk talks about this, is where the risk of that kind of a practice is glaringly obvious. That there doesn't need to be a prior similar act. That that is a gap, glaringly obvious, that must be closed. For example, as the court knows, it is customary for jails to restrict male officers from entering the female section of the jails, unsupervised or alone. That's an on-site behavior that's closely monitored. They prohibit, in two of the cases that were cited out of the Tenth Circuit in the appellee's brief, it involved officers committing sexual transgressions with female inmates when they were transporting them within the jail's confines. These are policies that restrict these types of contacts on-site. When you have other correctional officers, other people walking around, you have cameras, you have supervisors on-site, to permit a lone, unsupervised male officer to put a sick, vulnerable female inmate in a transport van and take her to the hospital and bring her back unsupervised is a glaringly obvious problem that would be apparent to any competent jail administrator. Do we consider the specific circumstances? As I understand the record, there was no female officer that was capable of transporting the plaintiff to the jail on this particular occasion based on when she got sick. Do we consider that? That goes to perhaps an even bigger problem, and that is the fact that a jail has to be staffed in order to properly manage these types of transports. On the occasion in question, when Ms. Franklin had to be transported to the hospital, there was a female officer at the jail, but she had not been trained to conduct these types of transports. That's not to say she couldn't have accompanied this transport. In fact, a subsidiary argument that we have is, you have this glaringly obvious policy that represents an obvious risk to an inmate off-site, in the custody of a male officer who is unsupervised. The jail did have some policies or practices to at least create some penumbra of supervision that might communicate to the transporting officer that they're being watched, that they are being monitored, and that was a requirement that they provide a status report, call into the jail, provide a status report when they were leaving, or a status report, and then call the jail and report when they were leaving the hospital. Another requirement was to report the mileage of the vehicle before they left and when they returned. Now, that might have created an aura of supervision and oversight that would have, in some cases, deterred this kind of misconduct, but the evidence was those were never enforced. Price, the offending officer, had never heard that that was required, and the jailer admitted in his deposition he had never punished anybody for violating them. So even the safety net wasn't there. And then— Price knew, he conceded he knew he was violating jail policy, didn't he? Sure. Your Honor, I would be shocked if there was a jail in this country that didn't say, you can't sexually abuse inmates. That's what this jail said. What you want is you want us to establish a rule to apply to every jail in the Sixth Circuit that they must have a female jailer transport, or I guess the same sex jail personnel transport people, despite personnel problems. You're asking us to establish a uniform rule throughout the Sixth Circuit, are you not? And the problem I have with that is I come from northern Michigan. We have small jails up there, and we have jails that don't have extensive personnel, and I think it's unrealistic to say that the Sixth Circuit is going to require this in every little jail. I don't know how big Franklin County is. I don't know, really, Franklin County. I don't know if it's a big county, small county, or what, but I see the problem with this as to applying to small jails that I know exist in my area. I don't believe we're asking the court to establish a hard and fast rule. I thought that's what you were saying, basically, because they had no notice that this had not happened before in Franklin County in the jail. They had no notice of it, and you say, well, they should have. Everybody should. It's obvious. It's common sense, and therefore I guess every county is going to be liable unless they staff it like you want to because you're establishing, I think, a hard and fast rule here. Well, I think my point, Judge, is this practice that we're discussing is glaringly improper. You are going to apply it to every little jail. And how a court or how a jail addresses that, whether it's by having two male officers, a supervisor and a driver, or a female company, or a female operator, or establish a separate facility for females entirely. I mean, this is what PREA talks about. This isn't my idea. This is something that is simply required by PREA, and it requires a recognition of the fact that these types of problems have simply defeated every prohibitory type of policy, every bit of training, every good intention. The point is you shouldn't have these practices in the first place when they are this glaringly obvious an invitation to the problems that can result here. And there's a myriad of different ways to take care of that. The court doesn't have to select any one. I think if the court says that this was a glaringly obvious deficiency and something that clearly should not have been permitted, just like a situation where a male officer on site shouldn't be allowed to go into the female section, take a female inmate out, and take her to a portion of the jail that's unmonitored by security cameras. What's your best Sixth Circuit case on point? Well, Your Honor, there is no Sixth Circuit case that mirrors these facts exactly. We looked hard for a case in the Sixth Circuit. We looked hard elsewhere. It is hard to find a situation where a jail was this unresponsive to not only the existence of this policy, despite the fact that it said it certified its compliance with PREA, and it said it was going to make prevention of sexual assault a priority. Thankfully, there are not a lot of jails out there with these types of practices. And the closest we could come was the Seventh Circuit case in Polk County. Now, the Seventh Circuit, its clearly established law on these types of issues is no different than this court. This court has previously recognized the inherently coercive nature of a correctional environment when it comes to the safety and security of female inmates. This court has previously required that policies be written to protect clearly vulnerable populations. You did that in Taylor v. Michigan. You put that together, the Seventh Circuit, with the same grounding that this court has in its jurisprudence, has given this court a roadmap and an explanation of why this type of misconduct should be prohibited and clearly that the jail knew or should have known. Thank you. We'll have your three minutes rebuttal. May it please the court. Mr. Belsley. Good morning, your honors. My name is Andy Hagerman. I'm with the law firm of Stahl, Keenan, Ogden, and we represent the appellees in this matter, Franklin County, Kentucky, Jailer Rick Rogers, and Captain Wes Culbertson. Your honors, this case relates to the unilateral and unlawful actions of a single corrections officer, Brandon Price, on the evening of January 18, 2019. That evening, unbeknownst to anyone else, Mr. Price, who had no history of misconduct whatsoever, sexually abused Ms. Franklin while transporting her from the Frankfurt Regional Medical Center back to the Franklin County Regional Jail, where she was an inmate at the time. Upon discovering Mr. Price's actions, the jail promptly terminated his employment, reported him to the police, and he was ultimately incarcerated for what he did. To be clear, while the record demonstrates that Mr. Price violated Ms. Franklin's rights that night, the record is likewise clear that the Franklin County parties had no reason to suspect his illegal intentions and it did not participate or acquiesce in his misconduct. And for the reasons that follow, this court should affirm the district court's grant of summary judgment. What about the argument from the other side that this was such an obvious situation that the county, you know, shouldn't have allowed it to happen? Yes, your honor, and I'm glad you asked that question. Ms. Franklin relies principally on the case of JKJ v. Polk County, a Seventh Circuit case. However, the facts of that case are completely in opposite to those of this appeal. In JKJ v. Polk, the plaintiffs endured repeated sexual assaults by jail staff over the course of three years, and they adduced evidence establishing that the county jail staff received no training on sexual harassment or assault of female inmates, the jail did not have a PREA coordinator, and the jail inadequately responded to previous allegations of sexual misconduct by those particular jail staff members. Conversely, in this case, Franklin County Regional Jail does, in fact, employ a PREA coordinator and multiple PREA-trained investigators. This was one isolated incident, not repeated incidents over a long period of time, and Mr. Price had no previous instances of misconduct of which to speak, meaning that the county had no notice that he would act in this illegal manner. Principally, Ms. Franklin asserts a Monell liability claim against the county. She asserts three principal theories of Monell liability, and the one relied upon most heavily at oral argument today is the policy or custom theory of Monell liability. Under this theory, the plaintiff must show that through its deliberate conduct, the county was the moving force behind the injury alleged. This is because it's well established that a county may not be held liable under Section 1983 on a vicarious liability theory. Here, Ms. Franklin's argument relating to the custom is that the county had an alleged custom of permitting a single male officer to transport a female inmate off-site. However, Kentucky statutes and Department of Corrections regulations do not require same-sex transports, and they do not require multiple officers to transport a single inmate, and neither does PREA. The case of Whitson v. Stone County Jail out of the Eighth Circuit in 2010 is pertinent on this issue and the questions that Your Honors raised to my opposing counsel. There, the Eighth Circuit noted that it could, quote, scarcely hold as a matter of course that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. Absent evidence to the contrary, we assume that jailers will not violate models of social decorum or otherwise commit a punishable offense. By creating a blanket rule in the Sixth Circuit that a female officer must at all times be available and on a transport of a female inmate, that's precisely the rule that this Court would be announcing, that every male officer poses a substantial risk of sexual assault to every female inmate when they're left alone. That is not and should not be the rule, and Ms. Franklin's principle theory of Monell liability necessarily fails. Ms. Franklin also raises the issue of inaction on the county's part, and under Monell, to establish a violation based upon inaction, the plaintiff must show, among other things, a clear and consistent pattern of unconstitutional conduct at the jail. Unfortunately for Ms. Franklin, this was an isolated incident by an officer with no history of misconduct whatsoever, an honorably charged U.S. military veteran who had recently been promoted within the jail. Ms. Franklin also asserts the training and supervision theory of Monell liability. The Thompson notice doesn't have to be notice related to a particular officer. I think the plaintiff suggested there was other incidents of misconduct in the jail, one between an officer and an inmate and then the others between other jail employees. So is it specifically to the employee in question, or is it related to the jail overall? No, Your Honor, it's not specific to the jail employee. However, it does require a pattern, and the instances raised by Your Honor that were set forth in Ms. Franklin's brief are in opposite to this case. Two of the three examples relied upon by Ms. Franklin related to alleged sexual advances or comments made between and amongst jail staff, i.e. not involving any inmates and, for that matter, not involving any of the individual parties to this lawsuit either. And the third instance relied upon by Ms. Franklin, while involving an officer and an inmate, that involved an officer and an inmate passing what were referred to as sexually charged notes to each other. And frankly, that's a completely dissimilar situation to sexually abusing an inmate during a transport back from the hospital. So there's no prior incidents of sexual assault during a transport in Franklin County? That's correct, Your Honor. How about in the state of Kentucky? Your Honor, I would need to look into the PREA statistics on that. However, none were raised in the record that we know of. Okay, so they don't rely that Franklin County had notice because of prior incidents for surrounding counties or something like that, that this is a prevalent problem, even if it's not in their county. There's no allegation of that, is there? No, Your Honor. And that's an interesting question because recently this court in Essex v. County of Livingston dealt with a similar issue, I believe, out of district court in Tennessee, wherein the plaintiff's principal argument, and as the appellant on appeal, was that the county sheriff had noticed that there were, I think, a couple of sexual assaults during transports in surrounding counties but not in Livingston County. And this Sixth Circuit upheld the sheriff's qualified immunity, explaining that he had no reason to suspect that this would happen within the confines of his own jail. In sum, Your Honors, with respect to Ms. Franklin's Monell liability claim, the county can't be held liable under Section 1983 strictly because it employed a tortfeasor and rogue bad actor like Mr. Price, and her Monell liability claim necessarily fails. The next claim raised by Ms. Franklin on appeal is a deliberate indifference claim against Captain Culbertson. Foremost, Captain Culbertson is entitled to qualified immunity. As I mentioned in Essex v. County of Livingston, the court dealt with a similar case of sexual assaults during transport by a male deputy, and in upholding the sheriff's qualified immunity, the court explained that this doctrine bars individual liability where,  a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights. The sheriff in Essex occupied a very similar position to Captain Culbertson here. Captain Culbertson was a supervisory official at the jail. However, he was not personally involved in the transport by Mr. Price of Ms. Franklin that night. He was not privy to any conversations that they had, and he had no reason to suspect and did not know about Mr. Price's ultimate sexual misconduct until well after the fact when the jail opened an investigation into Mr. Price. In Essex, this court noted that at base, there must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury, and Ms. Franklin has simply pointed to no direct correlation, and Captain Culbertson is entitled to qualified immunity. In any case, your honors, Ms. Franklin failed to adduce a genuine issue of material fact on her deliberate indifference claim, and Captain Culbertson was entitled to summary judgment on the merits as well. As your honors are aware, deliberate indifference requires more than a lack of ordinary due care or inadvertence, and it is a stringent standard requiring that a municipal officer ignore the known or obvious risk of the consequence of his actions, either by encouraging misconduct or directly participating in it. Here, that means at a minimum a showing by Ms. Franklin that Captain Culbertson implicitly authorized, approved, or knowingly acquiesced in Mr. Price's misconduct. There's no question that Mr. Price committed a terrible act against Ms. Franklin that night. However, Captain Culbertson simply had nothing to do with it. Ms. Franklin, at the trial court and in this court, has simply failed to piece together a valid, supported legal theory demonstrating how Captain Culbertson manifested deliberate indifference towards her that night. Instead, the record reflects the following material facts. First, Mr. Price transported Ms. Franklin to the hospital by himself, as is permissible under Kentucky law, Department of Corrections regulations, and PREA. Number two, Captain Culbertson stopped by the hospital that night to check on Mr. Price. As Captain Culbertson testified, quote, Any time I had a deputy that would leave and go take an inmate to the hospital, I always made it a goal to go check on that deputy, end quote. Number three, Captain Culbertson spoke with Mr. Price for a few minutes, and based upon Mr. Price's statements and conduct, Captain Culbertson reasonably believed that Mr. Price was about to leave to take Ms. Franklin back to the hospital. Thus, Captain Culbertson went home because his shift was over. Number four, after he left, Mr. Price stated to Ms. Franklin that he, quote, almost got caught, end quote. In other words, it was obvious to Mr. Price at that time that Captain Culbertson did not perceive any sort of risk to Ms. Franklin, and certainly not a substantial risk of sexual assault. As Captain Culbertson testified, quote, Sergeant Price was an outstanding deputy, so I mean I never dreamed that this would ever be true, end quote. She settled with Price, is that right? Yes, Your Honor. She won summary judgment in the district court against Mr. Price and ultimately settled with him. So the issues against him are not on appeal at all then before us? No, Your Honor. Number five, Mr. Price sexually abused Ms. Franklin in the transport van before taking her back to the jail and instructing her to keep it a secret. And number six, when Ms. Franklin's cellmate told jail staff what had happened, he was promptly fired, reported to the police, and incarcerated. That is it. There is zero evidence in the record even suggesting that Mr. Price had any history of misconduct, and he did not. There is zero evidence in the record that a reasonable officer would have perceived a substantial risk of sexual assault to Ms. Franklin that night, and there's zero evidence that Captain Culbertson was subjectively aware of any such risk. And summary judgment in his favor was appropriate. Ms. Franklin is an inmate, not a pretrial detainee, is that correct? Yes, Your Honor. So the deliberate indifference standard requires a subjective component? Yes, Your Honor. Finally, Your Honors, this court should affirm the district court's grant of summary judgment to Captain Culbertson and Jailer Rogers on Ms. Franklin's claims for negligence and gross negligence. First, these men are entitled to qualified immunity on these claims. The principal basis Ms. Franklin sets forth for the claims is their alleged failure to enforce every one of PREA's requirements. However, courts have consistently held that PREA is not mandatory and does not create a private cause of action. Thus, to the extent that her claim is based upon them allegedly not following PREA to a T, even though there's no evidence that they did not, her claim necessarily fails on qualified immunity standards. In any case, summary judgment on the negligence and gross negligence claims was also proper on the merits. Kentucky precedent is clear that while the law imposes a duty on a jailer to exercise reasonable and ordinary care with respect to the inmates in his custody, he cannot be charged with negligence in failing to prevent what he could not anticipate. Here, there's no evidence that Jailer Rogers took any part in these actions. Instead, the evidence shows that under his purview, the jail maintains specific written policy affirmatively prohibiting sexual contact between inmates and jail staff, affirmatively complying with PREA, affirmatively prohibiting jail staff from accepting bribes or using their position for their own personal gain, and Ms. Franklin has simply failed to rebut that evidence. With respect to Captain Culbertson, his mere knowledge that Mr. Price was transporting Ms. Franklin that night does not somehow demonstrate that he failed to exercise reasonable care for her well-being. In the absence of evidence showing that there was some specific risk of which he should have been aware that night, summary judgment was appropriate on her negligence claims as well. I believe that is it, Your Honor, and for these reasons, the Franklin County parties respectfully request that this Court affirm the judgment of the District Court granting them summary judgment. Thank the Court for its time this morning. Any further questions? Judge Gilman? Judge Maddox? Thank you, Counsel. Three minutes rebuttal. Thank you, Your Honor. Very briefly, these sorts of situations occur all the time involving officers with unblemished records. That's why you eliminate the opportunities. But that sounds like a strict liability argument. Under Monell, there is not respondeat superior liability, vicarious liability. You seem to be arguing that there should be here. That's not what Monell says, is it? Well, when the risk is this glaringly obvious, Your Honor, it is almost strict liability. That is. You say the risk is so obvious, but if it was so obvious, it would be occurring every day of the week around the country. It's not. Well, as I indicated before, Your Honor, we look for a case that involved another jail that permitted unsupervised lone male officers. You don't have a prior transportation incident of sexual assault in Franklin County, and you haven't cited one in the state of Kentucky, as far as I know. If it's so obvious, you'd think there would be other instances of it. I think the reason it's obvious is because there are no jails that permit this type of practice. Well, is that correct? Is that in the record, too, that this is the only county jail that permits different sex officers to transport? I don't remember reading that in the record. Your Honor, we couldn't find one, and the defendants didn't raise one. They didn't submit. They didn't. Now, our expert. But it's your burden to establish Monell liability here, not theirs. Well, I understand, Your Honor. But our burden is met first by establishing a glaringly obvious error in their policies and practices that almost invites this type of abuse. All right. Getting back, if it's glaringly obvious, you would think that it would happen with some frequency. And you can't cite any frequency at all. Well, what I can cite to, Judge, is the history of sexual misconduct in the jail. Well, yeah, unrelated to transportation. Well, but it goes to, as the Seventh Circuit found in Polk, it established there was a culture in the jail. We have a situation here, Your Honor, where not only were two officers disciplined, one for improper sexual contacts with an inmate, another for improper sexual contacts with a female guard, but a third in which the supervisor that disciplined both those guards himself was caught engaging in the kinds of discussions, the Seventh Circuit referred to it as tear talk, that we've referenced in our brief and I don't want to go into in detail here. This was a culture. And it was a culture that even the law firm that investigated the incident involving the supervisor told the county, you need to tighten this up. And they didn't do it. Thank you, Your Honor. Thank you. All right. The case will be submitted.